Our next case is Hastings Mutual Insurance Company v. Carpentier et al. For the appellant is C. William Bussey. Is that pronounced correctly, sir? And for the appellee is Mark Weitz. Pronounced correctly?  Justice Steigman, members of the court. I am here today for the appellant, Hastings Mutual. I'm cognizant of the instructions that we received from the court, that not to repeat arguments were raised in the briefs, and I believe that this thing has been pretty much briefed as far as it can be briefed. There was a massive amount of paper that was filed regarding this appeal, but in the last analysis I think the issues as to the Hastings appeal are very simple. It boils down to basically one issue, and that is whether a personal auto policy will provide the requisite underlying coverage to support the Farm Umbrella Policy, and thereby trigger coverage under the Farm Umbrella Policy for the February 15, 2008 occurrence. It is not disputed that, by the appellees, that the farm owner's policy that was in place and underlying the Farm Umbrella Policy does not provide coverage for this occurrence by virtue of exclusion, which specifically excludes coverage for liability resulting from the use or entrustment of a motor vehicle. And likewise, the Umbrella Policy has a similar exclusion in it. Specifically, the Umbrella Policy states that our coverage is no broader than the underlying insurance except for our liability limit. So the issue that the court must decide is whether the trial court erred in holding the personal auto policy, which is referred to as the 756 policy. Well, counsel, just to cut right to the chase, isn't really the critical issue about the language, which is as follows. If you go to Section 3, then you go to Subsection B, the following underlying insurance ensures all land motor vehicles owned or hired by the insured at the inception of the current policy period. What does that mean under your theory of the case? That has to be construed with the underlying policy. But that language was added into the declaration page, wasn't it? It was. It was on the declaration page. And then underneath that was the underlying policy, which, in fact, excluded that. But why would that language be added in? Because there was a block language that was put on that policy for coverage under a farm owner's policy that did write automobile coverage that was available to insured seeking coverage. They did not seek it here. As a matter of fact, in the record there is an application that was signed by David Conrady where there was a blank box that stated list autos seeking coverage owned or made for the regular use of the corporation. And the word none was written in there. And then he signed that application. So basically what they're trying to do is, in 20-20 hindsight, after this tragedy occurred, to scramble around and try to find if there's some other coverage that they can plug in under that to support that farm owner's policy. It seems like what they're trying to do is to give some effect to the language that was placed in the declaration page, which is prefaced with the expression it is agreed that this language applies. And so to me what you're asking this court to do is totally ignore that language as if it were never put in. At the same time, the court cannot ignore the language that what is meant to support that policy is a scheduled policy and it is defined in the umbrella policy. It states specifically that it must be a comprehensive farmer's liability policy. Now if they would have had a farmer's comprehensive liability policy that would have afforded them automobile coverage, which they could have had, they just didn't procure that coverage, that comes into effect. Okay. So under your theory then, this court should just act like subsection B doesn't exist because it has no effect at all on the decision we should make. That would be your theory, right? My theory, Justice Turner, is that it can't be read in a vacuum. The policy has to be written in a whole and it can't be piecemealed like that. One thing that I would like to point out to the court is that this is a farm owner's It's a very unique animal. It ensures very unique risks. If, as I said before, if they wanted to add on to that automobile coverage, they could have got it, they just never procured that coverage. Which leads me to my next argument regarding maintenance, because this was raised, maintenance or procuring the policy. There's a provision, and I know that I'll be asked about this today, that says even if you do not maintain that underlying coverage, it doesn't matter because the overlying umbrella coverage will be considered to be in place. But in this circumstance, what they've done is they've confused the word maintain with obtained or procured. Had Tri-Corp done what they were supposed to do and obtained an underlying policy, and it didn't have to be from Hastings, it could be from somebody else, if they had procured or housed the insurance that afforded them auto coverage and for whatever reason it failed, let's say the company went under or there was a non-payment of a premium or whatever reason the underlying coverage failed, the umbrella coverage stays in place. Here again, they just never got the right kind of coverage that was called for and was defined in the policy. Counsel, Judge Harris below wrote an extraordinarily thoughtful order concerning all aspects of this case that I found very impressive. You're an appellant here and I suppose cutting right to the chase. Where did he go wrong? Well, for one thing, the 756 policy is an auto policy. It wasn't called for in the umbrella policy. There is another part of this that I think is somewhat important, and it's the word following. Because at one point in the umbrella policy, it talks about the following insurance. And it says that the following insurance must have certain liability limits, which admittedly the 756 policy did, but that it must be a certain type of policy. It can only be a farmer's comprehensive liability policy. And what Judge Harris did was turn an auto policy into a comprehensive farmer's liability policy by rewriting the policy. And I would point out that ironically TriCorp at one point did have a counterclaim on filing the underlying action to reform the existing farm owner's policy to include automobile coverage. And when summary judgment was granted in favor of the appellees on the umbrella policy, he dismissed the reformation action. And TriCorp never contested that. TriCorp never appealed that. As a matter of fact, TriCorp is not even a party to this appeal. So to answer the court's question, I believe what Judge Harris did, we can call it anything we want, but he had to make an automobile policy, excuse me, a personal automobile policy, a comprehensive automobile liability policy. Otherwise, it just doesn't fit underneath the umbrella, and they can't support it. Well, didn't the umbrella policy, the personal umbrella policy, be purchased by the Congress to cover auto liability insurance? It did, and that was interpreted. As a matter of fact, it – And wasn't it this same 756 policy? No, no. No? The 756 policy was a personal auto policy that was originally issued, I believe erroneously, to TriCorp. And I should point out to the court that the agents that were involved in this were not leasing agents. They were independent brokers who were working on behalf of the Conrades and TriCorp. For whatever reason, they requested and had it issued as a personal auto policy. Somebody realized there's a problem there because TriCorp was the registered owner of the vehicle. So as an accommodation to the Conrades slash TriCorp, what they did was they said, well, here's what we'll do. We're going to move TriCorp as a named insured, and we're going to make David – I'm sorry. We're going to move TriCorp from the status of a named insured to an additional insured, and we're going to make David Conrady, the president of TriCorp, the named insured on the policy. Now, I know that the FLEs have made a lot about that and how it changed the policy and the face of the policy and the status of TriCorp. But the fact of the matter is that it's axiomatic in this state that an additional insured has rights that are no greater nor any less than a named insured. So they had insurance under the policy. Okay. I follow that, but you're kind of getting away from what my question was. What was the underlying policy for the personal umbrella? There were two. There were two underlying policies. One was the 756 policy. I asked you that a minute ago, and you said, no, that was wrong. I'm sorry. So the personal umbrella did cover the 756 policy. It did cover the 756 policy. It also covered a 749 policy that was issued to David Conrady and his wife. Okay. And so here, at issue before this report, is whether the TriCorp umbrella also has its underlying policy, the same 756 policy, which was the underlying policy for the personal umbrella. Is that right? And can that be? Well, it can be, because that's the way that it was written. And, in fact, paid. The 756 policy was interpreted as well as the umbrella policy that was issued to David and Lisa. Well, what I'm asking you is, can the 756 policy be the underlying policy for both the personal umbrella of the Conradys and the TriCorp umbrella? I don't think that it can be. But for reasons that I previously stated, it must be a comprehensive liability policy by definition in the farm umbrella policy. Okay. But you concede that it was proper. In fact, I guess you acquiesced in it, that the underlying policy for the personal umbrella, one of the underlying policies, was the 756. That's correct. And that's the policy that was issued to David, however, and at and insured, was TriCorp. That's correct. Okay. Additionally, we have the issue of the underlying trial court looking beyond the four corners of the document in order to reach its result. And I think, in view of the fact that it's very clear what the underlying policy has to be, because it is a scheduled policy, that doesn't create an ambiguity. Nor does the language that the court previously referred to, as the trial court never did find that there was an ambiguity in the policy. What the trial court stated was, there was a, and I think the word was, glaring inconsistency, which is not the same as an ambiguity. An ambiguity is when the policy cannot be interpreted because of something that's not clearly written in the policy. An inconsistency can be explained away, and it was, in this case, based on the language that was called for in the umbrella policy. Again, it has to be a farmer's comprehensive liability. And no, as a practical matter, this is a, it's a very unique policy. Obviously, as I said before, it insures farm operations. And if trial court had actually done what it said that it did, that is, intended the 756 policy to support the farm umbrella policy, what that would have left him with, theoretically, is no coverage for the remainder of his farm operations. He would have had a very limited form of coverage under that automobile policy, which is why Why couldn't both policies be the underlying policy for the umbrella? I don't think it calls for that. I'm saying, as a matter of law, of practicality, if it had been listed that way, it could cover two policies. It is not a farmer's comprehensive liability policy. Right. I get your argument about that part of it. But an umbrella policy can have, as an underlying policy, more than one. In fact, the personal, you've already indicated, the personal umbrella for the Conradys did have two underlying policies. Not a personalized policy. Not a personalized policy. But on the farm owner's policy, what they would have done is they would have afforded coverage, automobile coverage, in the underlying policy if it had been requested, and it was not. Okay, but I think I'm following you. The farm umbrella could have covered the farm owner's policy, and if it had been listed in the declarations also, according to you, automobile liability. If automobile liability policy would have been included in the farmer's policy. Okay, so there's nothing that precludes that from happening. So it's not opposing counsel's argument that the tri-port umbrella cover both the farm owner's policy and the, what was it, five, what's the number, five whatever, I can't remember it now. The 756 person? 756, yeah. His argument is that it covers the 756. But not both. Not both the? Not the 756 policy and the farm owner's policy. I don't believe that that's been raised. As a matter of fact. And the reason I'm asking that is because you're basically suggesting to this court that if we adopt their theory, 756 is the underlying policy, then he didn't, or they didn't have an umbrella for the farm owner's policy. That's basically what you're saying, right? Well, that would provide automobile coverage. Okay, I guess I'm not making myself clear. There's a farm owner's policy. Correct. I think mine's called a farm guard, whatever. Then there's a 756 policy, right? Right. And I thought you argued a minute ago that under their theory there is no umbrella for the farm guard, for the farm policy, because they have elected the umbrella or have argued the umbrella applies only to the 756 policy. Is that right? They are arguing that they should be afforded additional coverage, additional automobile coverage. Okay, that brings me back to my question. Can both of them be the underlying policy for the umbrella? From an underwriting guideline standpoint, I don't think it needs to be written. Okay. I've taken too much of your time. No, it's fine. Go ahead with your argument. The points were taken. Actually, leave. That's all that I have. Thank you. Thank you, Counsel. Mr. Weitz. Yes, sir. Justice Steigman, Justice Turner, Justice Kinect, my name is Mark Weitz from Weitz & Kapitan. I represent the Carpentier, McGlasson, and McCarty Estates.  She's the mother of two children. I've also been authorized, as you know, to present argument on behalf of the other defendants who are plaintiffs in the underlying wrongful death and injury cases that brings us before this court. I wanted to start, if I could, by answering some of Justice Turner's questions about both the facts and legal issues that are here before the court, because I think that the first question that you asked, Justice Turner, about the critical issue being the language and the insuring of all motor vehicles is the central issue. But I wanted to actually start by the question that you asked at the end as it relates to can the same underlying policy be underlying for two umbrellas and was that, in fact, the case here. And although Hastings did one thing, which is that they interplayed the Conradis' personal umbrella, claiming that what is really the tri-port auto policy. They call it the 756 policy, but make no mistake, Your Honors, it is the tri-port auto policy. They claimed it was the underlying policy because they interplayed it. In fact, they called the 756 policy... That was a mistake, wasn't it? Well, it may or may not have been a mistake on their part, because it goes back to your question, can the same underlying policy serve to be the underlying policy for two umbrellas. I think it can. Hastings must think it can, too, because they interplayed it, even though all of the vehicles listed on the tri-port policy, 756, are owned by tri-port. David Conradi individually had no insurable interest in those vehicles. Tri-port applied for the policy. But let me stop you there, because I don't see how all of the vehicles were owned by tri-port, how 756 could have been the underlying policy for the personal umbrella of the Conradis. I'm struggling with that, because to me it doesn't make sense. It's an interesting point. Although it's been conceded, I understand that. It's been conceded, and Your Honor raises a very interesting point, and let me share some facts with you that are undisputed. As to the Conradi personal umbrella policy, let's look at the facts of the order that the policies were issued and who they were issued to. The Conradis had a personal auto policy issued to them on November 14th of 2007 with limits of $250,500. It's a very important point that I'm going to come back to. On December 6th of that year, a few weeks later, they applied for an umbrella policy. It was issued to them six days later on December 12th with an effective date of December 7th. It lists the Conradi umbrella policy that they interpled. It's the same form as the tri-port farm umbrella policy, that it is over an auto policy with limits of $500,500. Correct. Two different. Yes. However, it raises very important points for the appeal, and here's what they are. On December 21st, nine days later, the Conradi personal auto policy, the one that Hastings calls the 749 policy, was amended to increase the limits to $500,500. Why? So that it would conform to the Conradi personal umbrella. Now, Hastings obviously takes the position in this case that the same underlying policy can be under two umbrellas. When in fact, the tri-port entity had its own underlying coverage when its umbrella policy was issued. And let's look at those facts if we can. Tri-port applied for coverage on October 31st for auto coverage. And on November 14th, it's issued to them. They call it the 756 policy. But it's a tri-port policy. They claim that you can't have a business policy on a personal form. But there's nothing in the policy that says that. The policy says the insured is the named insured, and they named tri-port as the insured. Why? As we've pointed out, they own the vehicles. They wrote the check on their company check, as opposed to the Conradi personal policies. They were paid with personal checks. Lisa Conradi personally applied for it. It insured personal vehicles. What happens next? Tri-port applies for an umbrella policy on November the 20th. At the time they applied for it, they have coverage for their vehicles. The same coverage that the Conradis personally had in terms of the limits, 250, 500. And on December 6th of 2007, the tri-port umbrella policy is issued. And we go back to your first question, Your Honor, about underlying insurance being in effect. It was. It was. Now, Hastings argues before this court that, well, the tri-port auto policy can't be the underlying policy to the tri-port umbrella because the limits are different and it's not identified. And we have to look only at the specified underlying insurance. But they're stopped from making that argument. Why? Because they've interpled in the interpleader action the tri-port auto policy, which doesn't even conform to the requirements that they want to hang their hat on in the tri-port umbrella. Remember, the tri-port umbrella says 500, 500. They interpled a policy that's 250, 500. Why is that important? It's important because we have to give effect to the language. And it's also important, and the parties talked about this in their briefs, that insurance contracts are not construed like all contracts, where you ignore the circumstances and the intent of the party, even from the view of the insurer, the reasonable person on the street. They're a unique animal in the field of contracts. And the plain language of the tri-port umbrella policy says that it insures all motor vehicles. It says there's an agreement between the parties, the insurer and the insured, that that coverage is in place, which, in fact, it was. And it says that even if the underlying coverage is not maintained, the umbrella still affords coverage. Now, they'd like to point to an exclusion in the policy that talks about the failure to maintain underlying coverage, but there was underlying coverage. And in the body of the policy, we find the same language, not exactly the same, but mirror language in the body of the policy that mirrors the deck page. It says if you don't have the underlying coverage, the policy still provides coverage. And that is where Judge Harris found that there was a glaring inconsistency. Hastings argues that a glaring inconsistency cannot be an ambiguity. But that's exactly what a glaring inconsistency is, because, as Judge Harris pointed out, it makes the language in the deck page and in the policy inexplicable. Why was it there? The only reason it could be there, because it was the point of this policy, based on its plain language, that there be underlying coverage, which there was, that insured all land motor vehicles. And if you have some language there that is inconsistent or inexplicable, it leads to an ambiguity. And it's from that ambiguity that Judge Harris, correctly under Illinois law, which is uniform throughout the 50 states, looked at the intent of the parties and the underlying circumstances. So you reject Mr. Bussey's contention that an inconsistency doesn't constitute an ambiguity? Squarely wrong. And if you want to ask this, as I understand Mr. Bussey's argument, it's basically boilerplate language in the declaration. That would be subparagraph B that I'm referring to. And then what is really critical, then, is what follows that. It mentions farm comprehensive insurance. And that language in paragraph B sometimes is significant, sometimes isn't. It depends on what comes following that. I think that's what his argument is. And so that language is kind of boilerplate, but what comes underneath it is what governs what is covered. I think that's what he's arguing. Well, I do. I agree that's what he's arguing. But Hastings misses the point because there is an inconsistency and an ambiguity created between the language and the policy that's listed that follows. Because it's the language in the beginning that says, quote, This is in all caps. This is agreed that the following underlying insurance, A, is in force, which it was. B, insures all land motor vehicles. And then you read further down and you find an identified policy that certainly we admit didn't insure motor vehicles. We're not arguing that it did. But once you have a policy that talks about other policies, it talks about other documents, you do exactly what Judge Harris did. Well, it seems to me then you would take the position, although I don't guess it's really an issue here today, that the umbrella had as its underlying policies both the firm-specific insurance and the 756 policy. Or you just say no, only the 756 policy was the underlying policy. Okay. Just to make sure I understand your question, you're asking if it's the appellee's, the defendant's, position that the Tri-Port Auto Policy 756 was underlying to both the Conradi Personal Umbrella Policy on the one hand and the Tri-Port Farm Umbrella Policy on the other. Yes? That's part of it. Yes. And the answer to my question is yes, it can be. I know that you're going to say yes to that. Yes. It just seems to me that when you buy farm insurance and you get an umbrella that that farm umbrella is going to cover that farm insurance that you purchased. But you tend to be or seem to be arguing no, it doesn't cover the farm insurance. It covers the auto liability insurance, the 756. My question is why wouldn't you be arguing that it would cover both? I am. I understand your point completely. Just as Judge Tom Harris's order seems to confine his ruling to suggest that 756, the 756 policy was the only underlying policy, the umbrella, as compared to being both for the 756 and farm policy. Respectfully, I don't think that that's what Judge Harris wrote or intended. And I think that if his order may read that way, it's only because the only issue before Judge Harris was whether there was coverage under the Tri-Port Farm Umbrella and the underlying auto policy. It was never argued before Judge Harris, and we certainly don't take that position before your honors, that the Tri-Port Umbrella does not also provide umbrella coverage for the underlying farm owner's comprehensive liability policy. It absolutely does. Maybe I misunderstood Mr. Busey, but it seemed to me one of the arguments he was making that under your theory, Tri-Port would not have had an umbrella for the farm owner's policy. You're suggesting, yes, they still would, but they also had as an underlying policy 756. Yes, sir. Okay. Thank you. I had a hard time with that one. I think I'm clear on that now. You are cross-appellant in this case. Yes, Your Honor. Appealing an aspect of Judge Harris's ruling. What did he do wrong? Judge Harris made an error, I think an understandable error, in light of the facts below in finding that there was no coverage to be afforded under David and Lisa Conrady's personal auto policy. Here's the fact that led to Judge Harris making that error. When Tri-Port filed their interpleader action, they attached to it, and it was based on, the personal umbrella policy and the Tri-Port auto policy, which they call the David Conrady personal auto policy. But it's not. Attached to their interpleader complaint were deck pages from the Tri-Port auto policy that only named as the insured David Conrady. Because after they issued the policy, at which time it listed Tri-Port as a named insured, Hastings, for unknown reasons, went ahead and deleted Tri-Port as a named insured and relegated them to an additional insured. They never told Tri-Port about that, or anyone affiliated with Tri-Port about that, and that's undisputed. And they didn't comply with an Illinois law that required that they give certain notice to make that happen. So that created confusion as to whether or not in the two or more policy provision, in the underlying auto policies, you had what we've described as identical use. Are the named insureds the same, such that the two policies can't be combined? Judge Harris, we respectfully contend, erred because the use are not identical. You have, on the one hand, Tri-Port, and on the other hand, the Conradys individually. And as the Bruder Court found, in that type of a circumstance where you don't have identical use, the coverage can be combined. Now, there was another issue that came before that, that I didn't want the court to believe I was purposefully missing out, that had to do with whether or not an exclusion to the policy would have precluded coverage from the get-go. And that's the B3 exclusion that the parties talk about in their briefs. And again, the plaintiff's position is that that exclusion does not apply. And I said plaintiff because we're the plaintiff in the underlying cases. That exclusion does not apply because the claim doesn't arise out of ownership, maintenance, or use, as it relates here. It arises out of negligent entrustment, a term that Hastings could have used in their exclusion. They did use in other policies, so certainly they know how to use the term. But they didn't use here. So I haven't noticed the yellow light. I'm sure that I'm well past my time. I'm not. Okay, thank you, Your Honor. I want to make sure I haven't run afoul of the rules. The argument is that there's a grant of coverage. The exclusion doesn't apply. That was an error we contend Judge Harris made, finding that exclusion didn't apply. And then you get to the two or more policy provision, which Hastings says applies. And you don't have identical use. You really come back to a similar point that runs through both appeals, Your Honor. And it has to do with what parties sought what insurance for what vehicles with what money. And there's a very clear line of demarcation here and facts in the record below that are all without dispute. If we reject Hastings' appeal, where does that put your cross-appeal? It's certainly permissible, I think, for this Court to reject Hastings' appeal, affirm Judge Harris' ruling as to the TRIPORC umbrella policy, find that there is coverage, and likewise find that there is coverage to be afforded under the David and Lisa personal auto policy for David and Lisa Conradti because the coverage under the TRIPORC auto policy, the 756 policy, which is not the David Conradti policy, provides coverage for TRIPORC. So we do ask for the Court to affirm. I'm not following how that practically would make any difference. In other words, as Justice Feigin pointed out, if you were to prevail on the 756 policy, why would it make any difference whether you prevailed or lost in the argument you're making on the 749 policy? As far as money's available. Well, as far as money's available, it makes a difference because TRIPORC has already interpled the personal umbrella and the TRIPORC auto policy. They call it the David Conradti policy for $1.5 million. In essence, the defendants, the plaintiffs below, are seeking an additional $1.5 million of coverage. The TRIPORC farm umbrella policy, which provides $1 million, and the coverage afforded in the David and Lisa Conradti personal auto policy, which would provide another $500,000 of coverage. And there wouldn't be a stacking issue at that point? No, and the reason is that there are not identical use as defined in the policies that would apply and allow for stacking. The reason being that in the policy that Hastings has already interpled, the U is TRIPORC. They want to say it's TRIPORC and David Conradti, who had no insurable interest in the vehicles and didn't pay for the coverage. And in the underlying policy at issue in this appeal, in the DEC action, you have David and Lisa Conradti. So there is not a unity or alignment of interest, and you have separate parties that pay separate premiums for separate insurance. Both should be afforded to TRIPORC, the defendant in the underlying action. Thank you, Your Honors. Thank you, Counsel. Mr. Busse, any rebuttal, sir? Just a couple of short points. Okay. First is to the Hastings appeal. Well, some of the points that Mr. Weitz is making overlook the differences in the underwriting standards between personal lines policies and business policies. There is no estoppel because the personal lines umbrella policy was interpled. It was interpled because this vehicle that was involved in this accident was named in the policy that supported it. So that does not result in any type of an estoppel. As to the stacking issue that we're talking about, I think the arguments that have been raised here today are asking the Court to leave a very well-defined and old body of case law relative to anti-stacking provisions. If I understand his argument, what Mr. Weitz is arguing is the use in these different policies are not the same. But they don't have to all be the same. As long as one individual seeking coverage is named and has protection under one policy and is afforded protection under another policy issued by Hastings, they only get the choice of the larger of the two limits. So if you have 1, 2, and 3 named under one policy and 1, 3, and 5 named under a second policy, 1 doesn't get additional coverage because he's named under two policies. The restrictions on the anti-stacking still apply. The argument relative to use of the automobile in the B-3 exclusion, the other argument that I believe Mr. Weitz is making is that if there are different theories of liability brought under the policy, then I get afforded different coverage. And again, that is something that is unfounded in Illinois law.  It makes no difference as far as the policy is concerned. He only gets the higher of one of two limits. Thank you. Thank you, counsel. I take this matter under advice that we recess until tomorrow morning.